1999 SD 142

**BUTTE COUNTY, a Political Subdivision, Appellee,**

and

**Butte County Board of County Commissioners, acting in their capacities as the Butte County Board of Equalization, Appellant,**

v.

**R. Thornton VALLERY, Appellee.**

No. 20896.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Nov. 3, 1999.

Terri Lee Williams, Butte County State's Attorney, Belle Fourche, South Dakota, Attorney for appellant.

James P. Hurley of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for appellee Vallery.

GILBERTSON, Justice.

[¶ 1.] Landowner brought an action against county board of equalization challenging board's assessment of his property, which was based on a method that classified certain real property as irrigable, as compared to dryland, and valued it as such. The circuit court reversed the assessment finding that irrigated or irrigable land cannot be separately classified for purposes of taxation under the South Dakota Constitution. The circuit court ordered the county assess in a similar manner to that of all other agricultural lands. The county appeals. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] Thornton Vallery (Vallery) owns approximately 2,661 acres of agricultural land located in the Belle Fourche River Valley. Approximately 300 acres of the property is hay land and farm ground. The Vallery land is not located in the government-established Belle Fourche Irrigation Project. In 1996 Vallery's land

had an assessed value of $231.50 per acre as irrigable property.

[¶ 3.] In 1997 Butte County (County) assessed Vallery's land at $845.90 per acre. This increase was based upon a finding the land was irrigable. Of the 661.07 acres appealed, County assessed 315 acres as irrigable land, and assessed it at a substantially higher value than the nonirrigable land, irrespective of soil type. Vallery appealed to the county board of equalization, arguing the assessment was in excess of full and true value. The board made no change to the assessment. On July 24, 1997, Vallery appealed to the South Dakota Office of Hearing Examiners (hearing examiner). The hearing examiner found County's assessed value of Vallery's 315 acres of land was determined by soil type, compared to sales of properties with similar soil types. The hearing examiner found County's means of assessment unconstitutional because it established a separate classification for "irrigable land" and considered land management when determining the assessed value of agricultural property. Furthermore, the county director of equalization valued real estate as dry land, not as irrigable land if the property was not "set up" for irrigation. The hearing examiner ordered County to reevaluate the property consistent with nonirrigable agricultural property and assess it accordingly.

[¶ 4.] On September 9, 1997, County appealed the hearing examiner's order to the circuit court. It claimed Vallery's land was properly assessed as irrigable due to its location, soil, terrain, topography and water rights. In determining the 1997 assessment, County considered land management by irrigation, implemented by water rights.[1] It compared the types of soil, as rated by the State according to productivity, location of the property and irrigability. County claimed values for dry land soils and irrigable soils were determined by analyzing sales of comparable property. It was County's policy that if water rights were available and if the soils were irrigable and being irrigated, they were treated as irrigable soils.[2]

[¶ 5.] The circuit court concluded County was still considering whether land was actually irrigated in making tax assessments on agricultural land, and thus, taking into consideration farm management decisions. The court further concluded this method of classification resulted in two separate classes of property for agricultural land and was therefore unconstitutional.

[¶ 6.] The circuit court also concluded County reevaluated irrigable soil if there was irrigation or if there were some type of water rights. Thus, County was in essence double taxing agricultural land by separately reevaluating whether the soil was irrigable. The circuit court affirmed the decision of the hearing examiner and ordered Vallery's property be classified and valued consistent with the method for valuing other agricultural land in accordance with South Dakota law.

[¶ 7.] County appeals raising the following issues for our consideration:

1. Whether County created a separate agricultural classification for assessment purposes in increasing the value of land deemed irrigable.

2. Whether the assessment of the director of equalization resulted in double taxation.

3. Whether the decision of the hearing examiner was clearly erroneous.

## STANDARD OF REVIEW

[¶ 8.] This is an appeal of a tax assessment pursuant to SDCL 10–11–43 and thus it is procedurally governed by

---

1. For instance, Glenberg A soil without irrigation is assessed at $135 per acre, but if it is irrigated it is assessed at $741 per acre.

2. The Butte County Soil Survey Statistics applied by the director of equalization show each type of soil in the County as Glenberg soil with a symbol of GGA. If the property containing GGA soil had water rights the soil then become identified with the symbol GGA–I, the "I" indicating irrigability and water rights.

SDCL ch 1–26. Under SDCL 10–11–42.1, the hearing examiner tries the issues de novo. On appeal both the circuit court and this Court review that decision as set forth in SDCL 1–26–36. This standard of review requires us to accord great weight to the findings and inferences made by the hearing examiner on factual questions. *Clarkson and Company v. Harding County,* 1998 SD 74, ¶ 5, 581 N.W.2d 499, 501 (citing *Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228). "When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous." *Moose Lodge v. Pennington County,* 1997 SD 80, ¶ 5, 566 N.W.2d 132, 133 (quoting Permann v. Dep't. of Labor, Unemployment Ins. Div., 411 N.W.2d 113, 116 (S.D.1987)); *West Two Rivers Ranch v. Pennington Co.,* 1996 SD 70, ¶ 6, 549 N.W.2d 683 (SD 1996) ("value is a question of fact and the trial court's determination will only be overturned if it is clearly erroneous"). When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable.

[¶ 9.] In the present case, the circuit court concluded this irrigated or irrigable land cannot be separately classified for purposes of taxation but should be considered as dryland and assessed according to SDCL 10–6–33.1 and SDCL 10–6–33.2. We will only reverse "if after a careful review of the entire record[,] we are definitely and firmly convinced a mistake has been committed...." *Clarkson,* 1998 SD 74, ¶ 5, 581 N.W.2d at 501 (quoting *Spitzack v. Berg Corp.,* 532 N.W.2d 72, 75 (S.D.1995)); *Richter Enterprises v. Sully County,* 1997 SD 61, ¶ 7, 563 N.W.2d 841, 843 (citing *Hutchinson County v. Fischer,* 393 N.W.2d 778, 781 (S.D.1986)).

## ANALYSIS AND DECISION

[¶ 10.] **Whether County created a separate agricultural classification for assessment purposes in increasing the value of land deemed irrigable.**

[¶ 11.] All real property in South Dakota is to be assessed for tax purposes at its true and full value. SDCL 10–6–33. There is a presumption that tax officials act in accordance with the law and not arbitrarily or unfairly when assessing property, and the taxpayer bears the burden to overcome this presumption. *Amert v. Lake County Bd. of Equal.,* 1998 SD 66, ¶ 14, 580 N.W.2d 616, 618–19 (citing *Richter Enterprises,* 1997 SD 61, ¶ 7, 563 N.W.2d at 843; *see also West Two Rivers,* 1996 SD 70, ¶ 7, 549 N.W.2d at 686 (citing *Roseland v. Faulk County Bd. of Equalization,* 474 N.W.2d 273, 275 (S.D.1991)). "Specifically, [the][t]axpayer must produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class[,] or was discriminatory." *Clarkson,* 1998 SD 74, ¶ 6, 581 N.W.2d at 502 (quoting *Richter Enterprises,* 1997 SD 61, ¶ 7, 563 N.W.2d at 843 (internal quotations omitted)).

[¶ 12.] Apart from the statutes governing assessment of property for taxation purposes, the underlying constitutional provisions must also be complied with:

(1) the burden of taxation of all property is to be equitable, S.D. Const. art. XI, § 2,

(2) agricultural and nonagricultural property may be separated into distinct classes for tax purposes, S.D. Const. art. VIII, § 15,

(3) valuation of property is not to exceed its actual value, S.D. Const. art. XI, § 2, and

(4) taxation is to be uniform on all property in the same class. S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2.

*West Two Rivers,* 1996 SD 70, ¶ 7, 549 N.W.2d at 686 (citing *Codington County Bd. Of Comm'rs v. Bd. of Equalization,* 433 N.W.2d 555, 557 (S.D.1988)).

[¶ 13.] Agricultural land is assessed pursuant to SDCL 10–6–33.1, which provides:

The true and full value in money of agricultural land, as defined by § 10–6–

31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the market value as determined for each county through the use of all comparable sales of agricultural land based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2; and

(2) The soil, terrain and topographical condition of the property including but not limited to capability, the land's use, climate, accessibility and surface obstructions which can be documented through an analysis of land selling prices;

The comparable sales that are used shall be evidenced by an instrument recorded with the register of deeds of the county in which the land is located, if the date of such instrument and the recording date is not more than two years prior to the assessment year.

County uses the soil survey prepared by the United States Department of Agriculture when making assessments. All land in the County is rated according to this soil survey.

[¶ 14.] The South Dakota Department of Revenue (Department) assigns a rating to each soil type every year. The soil rating is based on the production capability of each soil and takes into account irrigability of soil and how irrigability affects the ability of the soil to produce. Thus, the irrigability of Vallery's agricultural soil has already been taken into account by the Department. However, County arbitrarily added value to the Department's soil rating after it determined that the soil was irrigated.[3] It added an "I" suffix for irrigation to the soil survey statistics chart before the 1997 valuation of Vallery's property was performed.[4] This resulted in an increased valuation.

[¶ 15.] County, by adding this irrigation indicator, established a separate classification of irrigated land.[5] We have held that irrigated land cannot be separately classified for assessment purposes. *Matter of Butte County*, 385 N.W.2d 108 (S.D.1986). There we reviewed an assessment procedure implemented by County in 1981 where agricultural land actually irrigated was assessed by using inflated soil productivity ratings.

Land is defined in SDCL 43–1–4 as the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance. Butte County's valuation assessment procedures, however, went beyond assessing the earth's capacity, in and of itself, to produce agricultural

---

3. For example, Glenberg soil GGA and GGA–I are the same soil, only GGA–I is irrigated. GGA–I is valued by County more than five times higher than GGA solely because County has determined that it is irrigated. Similarly, DSA–I soil is valued by County more than *eight and a half times higher* than DSA soil solely because County has determined that it is irrigated.

4. This "I" suffix was not included in the 1997 Soil Survey Statistics transmitted to County by the Department.

5. The following colloquy is an excerpt from the administrative hearing, and illustrative of County's soil classification system:

Q: [hearing examiner] For my own peace of mind here, looking at the Glenberg soil on page two, or second sheet of Exhibit D, there's a GGA Glenburg, a GGA–I, GGB, GGB–I. Are those different soil classifications or the same soil dry and irrigated?

A: [director of equalization] Okay the GGA and GGB would be different soil classifications, it is basically the same soil ...

Q: So when it says, for instance GGA–I, does that mean it's different soil than GGA without the "I"?

A: No, it's the same soil only irrigated.

Q: Okay, so the Glenburg soil that's irrigated has a value of about five times more than nonirrigated Glenburg?

A: Yes, that's correct.

Q: And the same would be true of the others where there's a similar or identical soil, dry or irrigated?

A: That's correct.

products, for it attempted to assess the earth's capacity to produce according to the farming and crop nurturing systems actually implemented and employed by the individual landowner. Butte County attempted to establish a separate classification for irrigated land. This, we conclude, Butte County cannot do.

*Id.* at 111. (internal quotations omitted.)

[¶ 16.] In the case at bar, it appears County made an initial determination of whether a landowner does in fact irrigate, how many acres are irrigated, the type of irrigation used, and how often the landowner irrigates. It is only after this threshold determination is made that County checks the soil types to see if a particular landowner's soil is irrigable. We have recognized the irrigability of land enhances its value and is a relevant consideration when assessing agricultural land value. *Kindsfater v. Butte County,* 458 N.W.2d 347, 351 (S.D.1990); *see also Matter of Butte County,* 385 N.W.2d at 112. However, irrigability is only one out of several factors that an assessor should employ when assessing agricultural land value. *Matter of Butte County,* 385 N.W.2d at 112. We have previously stated:

> However, to the extent irrigability is already considered in the market value analysis, soil survey, etc., it should not be separately reevaluated, for double taxation based on this single factor would result.

*Kindsfater,* 458 N.W.2d at 351 (quoting *Matter of Butte County,* 385 N.W.2d at 112). We find the circuit court was correct when it concluded County was double taxing agricultural land by separately reevaluating whether the soil was irrigable. Both SDCL 10–6–33.1 and SDCL 10–6–33.2 provide an objective method for assessing the value of agricultural lands based on constant and universal factors. *Matter of Butte County,* 385 N.W.2d at 112.

> The soil, terrain, topography, character of the area, market value, and the capacity of the earth to produce are to be examined and assessed appropriately.

These factors are applicable to all agricultural land and the statutory scheme provides an objective and uniform method for assessing value. *The farming practices of the individual landowners are not to be considered when assessing the land's value. Farm management decisions cannot change the earth's value for taxation purposes. Likewise, a farm management decision to implement an irrigation system cannot change the earth's value for taxation purposes.* Nor can we read SDCL 10–6–33.1 and SDCL 10–6–33.2 as permitting consideration of the actual implementation of an irrigation system.

*Id.* (emphasis added) (internal citation omitted). We again affirm it is the ability of the soil to produce that is to be considered. In the context of irrigation this requires the proper focus to be on whether the land is irrigable, not whether the farming practices in use include irrigation or not.

[¶ 17.] As in *Matter of Butte County,* County has again implanted within its assessment process collateral factors and considerations subject to continuous variation. *Id.* Landowners in the County extract water for their irrigation systems from various sources. Many landowners receive water from the Belle Fourche Irrigation District. However, Vallery's land is not located therein. Vallery's private irrigation system is supported by water procured from the Belle Fourche River. Moreover, Vallery's water rights are restricted because some of his water rights are for early season, while others are for late season. Furthermore, almost all of the 315 acres taxed as irrigable land are located in the flood plain along the Belle Fourche River. Some years Vallery's land is flooded, while other years water is almost nonexistent. There was a period of five years when Vallery lost his crops due to lack of irrigation water. For many years he has been able to irrigate only one out of every five years.

[¶ 18.] The sales used by County to determine the value of Vallery's agricul-

tural land are not comparable. The director admitted at the administrative hearing most of the irrigated sales used for comparison to value Vallery's land came out of the Belle Fourche Irrigation District. The sale of land located within the irrigation project, where every year the government guarantees available irrigation water, is not comparable to Vallery's land, where the availability of water is often limited.

[¶ 19.] Vallery testified the market value of his land is approximately $159 per acre, because neighboring land was sold for $120—$125 per acre. Vallery also testified his 300 acres of irrigated farmland would not be worth over $300 per acre. County's 1996 valuation on his irrigated farmland was $119.37 per acre and $231.50 per acre. The 1997 valuation was increased to $845.90 per acre.

[¶ 20.] In addition, the director did not personally inspect the sales of land used by County for comparison. During the administrative hearing, the director admitted that he did not check whether the soils he used for comparison were comparable to Vallery's land.

[¶ 21.] Vallery argues County does not apply valuation procedures consistently or uniformly. We agree. We find the substantial increase has no relation to fair market value and results in an unjust assessment of the property. There is evidence in the record of other landowners similarly situated, who have water rights and irrigate, but are not taxed extra for irrigation in the same manner. One such landowner, whose land was evaluated informed the director that she irrigates one out of every five years from a dam. The director noted this dam is full only when the Moreau River flows. This particular landowner was not taxed extra for irrigation, even though Vallery is in a similar situation where he can only irrigate once every five years and has access to a limited

water supply. We have stated that while "exact uniformity and mathematical accuracy are absolutely impossible, there must be substantial compliance with the legislative directives on valuation of agricultural property." *West Two Rivers*, 1996 SD 70 at ¶ 27, 549 N.W.2d at 689 (quoting *Codington County Bd. of Comm'rs*, 433 N.W.2d 555, 559 (S.D.1988)). Here, the director was unable to substantially comply with the statute due to a lack of comparable sales information. The presumption that the director's valuation is correct is thereby overcome. *Id.* (citing *Kindsfater*, 458 N.W.2d at 351) (County assessor's assessment loses its presumption of validity when he/she fails to follow the statutory commands).

[¶ 22.] The factors discussed herein should be considered to analyze whether various sales of realty qualify as comparable sales on determining whether the assessed value of land exceeds its fair market value. Herein County's assessment procedures are not applied uniformly to all landowners in the County. Its valuation of Vallery's land exceeds market value or full and true value as is required by law. The management, production and physical consideration factors of SDCL 10–6–33.1, which are discussed throughout this opinion, should be considered in: (1) evaluating comparable sales to determine the assessed value of land, and (2) assuring the assessed value does not exceed the fair value of the land. County's valuation does not comply with that statutory mandate.

[¶ 23.] We affirm.[6]

[¶ 24.] MILLER, Chief Justice and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 25.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 26.] The management, production and physical condition factors of SDCL 10–6–33.1, which are discussed throughout this opinion, should be considered in: (1) evaluating comparable sales to determine the

---

6. We have examined the remaining issues raised by County and conclude they are con-

trolled by our holding.

assessed value of land **and** (2) assuring the assessed value does not exceed fair market value of the land. SDCL 10–6–33.1.

[¶ 27.] Although consideration of these factors is proper for these two purposes, this assessment improperly included a separate classification for irrigated land. This resulted in an assessment exceeding the fair market value of the land in violation of SDCL 10–6–33.1 and S.D. Const. art. XI, § 2. Therefore, I concur in result.