HUTCHINSON COUNTY, State of South Dakota, A Political Subdivision, Plaintiff and Appellee,

v.

Bernard FISCHER and Lorraine Fischer, Defendants and Appellants.

No. 14976.

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1986.

Decided Sept. 24, 1986.

---

**3.** SDC 33.1314 provided: "The Court shall decide the issue raised by such motion before submitting the case to the jury."

Michael V. Braley of Horstman and Braley, Parkston, for defendants and appellants.

Glenn L. Roth, Hutchinson County State's Atty., Olivet, for plaintiff and appellee.

BRADSHAW, Circuit Judge.

## PROCEDURAL HISTORY

The Hutchinson County Director of Equalization (Assessor) assessed the Bernard and Lorraine Fischer (Fischers) residence for the tax year beginning January 1, 1983. The Fischers appealed this assessment to both the local and county Boards of Equalization; these boards upheld the assessment. The Fischers then appealed to the State Board of Equalization, which significantly reduced the assessment. Hutchinson County appealed this decision to the trial court. A trial de novo was held and the trial court reversed the decision of the State Board of Equalization. From this judgment, the Fischers appeal.

## STATEMENT OF FACTS

Fischers constructed a new home in Parkston, South Dakota, which was completed in 1981. For the tax year beginning January 1, 1983, the Assessor, Donna Zeeb, assessed the Fischer residence at the sum of $57,135. This assessment was appealed to the local Board of Equalization.

Upon recommendation of the local board, Assessor reassessed the Fischer residence along with three other homes in the same area. The Assessor was accompanied by Elmer Maas, fieldman for the South Dakota Department of Revenue. The four houses reassessed were the Fischer house, the Mogck house, the Uttecht house, and the Tiede house. After making a typical inspection of both the exterior and interior of all four houses, the Assessor and the state fieldman made no change in the assessment or classification of the houses.

The Assessor classified the homes using the South Dakota Appraiser's Manual, which was at the time the officially adopted manual for the Department of Revenue. The manual classifies homes in a range from Class 3 to Class 9. A Class 3 home is the lowest quality and a Class 9 home is the highest quality. In Hutchinson County, a Class 5 home is considered an average home while a Class 6 home is considered to be above average.

The Assessor testified that the classification of a house is based on the quality of workmanship and the quality of materials; all other features that add value to a home are treated as "add-ons." According to the South Dakota Appraiser's Manual, these add-ons include the foundation, exterior walls, brick or stone, roof, porches, basement, attic or half-story, floors, interior finish, heating and cooling, plumbing, electrical, and certain miscellaneous items. These add-ons then determine whether the house is given a "+ 5" or a "+ 10" above the basic classification. Therefore, a house in one class may have one of three classifications: i.e., 6, 6 + 5, or 6 + 10. These plus designations are a tool which allow assessors to bring the value of these homes closer together even though they are in a different class. The Fischer house and the Mogck house were classified as 6 + 5 houses while the Tiede house and the Uttecht house received a 5 + 10 classification.

The general contractor of the Fischer house and the other three homes referred to in Parkston was Ivan Haag, a local builder, who has been in the business for twenty-six years. All four homes were built in the same neighborhood at approximately the same time. Haag testified that he used the same work crew on all four jobs, that similar materials were used on all four jobs, and that all of the lumber used was of number one grade. The insulation, foundation, door units, and finish lumber were also similar. The taping and texturing was done by the same contractor in all four jobs. It was his opinion that the quality of workmanship and the materials used were the same in all four houses.

The Assessor agrees that the materials and workmanship are basically the same in all four houses. However, the Assessor placed the Fischer house in the Class 6 category because of its construction, good quality wood shingles, $2 \times 12$ floor joists, a nice basement, and ornamental stone trim. The Mogck house was placed in the same category because it had very good asphalt shingles and had good quality brick trim to the roofline on three sides. Other factors the Assessor took into account when she placed these homes into the Class 6 category were their desirability and architectural design.

The Uttecht and Tiede homes were classified as average Class 5 houses. Both of these homes had less brick trim of average quality on only one side of the house, average quality asphalt shingles with a straightline roof, and $2 \times 10$ floor joists. The Assessor also took into consideration the desirability, construction, and architectural design of these homes.

It is also worthy to note that the Fischer house contains certain features that the other comparable properties do not have, including hot water heat as opposed to forced air, air conditioning duct work, a fireplace, and an angled architectural de-

sign. While the Fischer home has a finished basement, the Tiede and Uttecht homes have finished basements complete with kitchen facilities and the Mogck and Uttecht homes have sliding patio doors.

Ken Doran, who is also an appraiser for the South Dakota Department of Revenue, testified on behalf of the Fischers that the Fischer residence had not been properly classified. However, instead of using the South Dakota Appraiser's Manual, Doran used the Marshall Swift Manual. This manual was not adopted by the Department of Revenue until July 19, 1984, a year and a half after the assessment in question. Furthermore, Doran did not inspect any of the comparable property; he only inspected the Fischer residence.

On appeal to the State Board of Equalization, the board determined that the county Board of Equalization had failed to properly and accurately equalize the property and reduced the valuation to $50,000. No calculation was shown as to how the valuation was reduced. Hutchinson County appealed this decision to the trial court, and the decision of the State Board of Equalization was reversed. The trial court upheld the Assessor's assessment of $57,135, thereby approving the classification of Fischer's house as a Class 6 + 5. Specifically, the trial court found:

"That Ivan Haag, the contractor that constructed all four of the homes, testified that all four homes were constructed with similar materials and the quality of workmanship was all the same[,]"

and

That (the County Assessor) felt that the Fischer home was a Class 6 home and superior to Class 5 homes, since the Fischer home had hot water heat rather than forced air and also had airconditioning, the same as the others, that the Fischer home had more expensive shake shingles rather than asphalt shingles, that the Fischer home has 12 × 2 floor joists rather than 2 × 10 floor joists, that the Fischer home had a wood burning fireplace whereas others had no fireplace, that the Fischer home had a stone

front rather than a brick front and that the home was a better looking and more desirable home than the others because of its architectural design, that (the County Assessor) felt that these factors affected the quality of the home and raised the home to a Class 6, because of the difference between materials and workmanship.

## SCOPE OF REVIEW

■ This court's proper scope of review of a trial court's decision in a trial de novo of an assessment matter is whether the decision of the trial court was "clearly erroneous." *Knodel v. Board of County Commissioners,* 269 N.W.2d 386 (S.D.1978); *Yadco, Inc. v. Yankton Co.,* 89 S.D. 651, 237 N.W.2d 665 (1975). When applying the clearly erroneous standard, the question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence this court is left with a definite and firm conviction that a mistake has been committed. *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

## DISCUSSION

ISSUE I: Did the trial court err by concluding that the Fischer's house was properly classified as a Class 6 + 5 residence by the Assessor? We hold that it did.

The Constitution of South Dakota, art. XI, § 2, states that "[t]axes shall be uniform on all property of the same class, ... and the valuation of property for taxation purposes shall never exceed the actual value thereof." SDCL 10–6–33 provides that "[a]ll property shall be assessed at its true and full value in money[.]" "True and full value" is defined by SDCL 10–6–1(5) as "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment[.]"

■ In giving effect to these constitutional and statutory provisions, the trial court is given broad authority. The trial court does not merely have power to deter-

mine whether an assessment is excessive or arbitrary; rather, it exercises independent judicial judgment to determine valuation. *Knodel, supra.*

In addition to the broad authority of the trial court, the Fischers have two presumptions to overcome. First, there is a presumption that tax officials will do their duty in accordance with the law and not act unfairly and arbitrarily regarding the assessment of property. *Skinner v. New Mexico State Tax Comm'n,* 66 N.M. 221, 345 P.2d 750 (1959). Second, there is a presumption that the county director of equalization's valuations are correct. *Mortenson v. Stanley County,* 303 N.W.2d 107 (S.D.1981).

The South Dakota Appraiser's Manual and the testimony of both the Assessor and the fieldman establish that the proper classification assigned to a structure depends on the quantity and quality of materials and the quality of workmanship used in the construction of the building. These factors are considered to insure that structures of similar construction and facilities may be grouped together. All other differences are to be treated as "add-ons."

We are of the opinion that the appraiser's manual creates a distinction without a difference between Class 5 and Class 6 residential property. In examining the manual closely, the only distinctions are:

| Class 5 | Class 6 |
| --- | --- |
| Adequate insulation; Medium to average asphalt shingles or equivalent; | Well insulated; Average to good grade shingles or equivalent; |
| Hot air forced circulation or equivalent. | Hot air forced circulation, hot water, steam, electric or equivalent. |

In this case there is limited evidence about insulation; thus, one must assume that the insulation in all four houses was basically the same inasmuch as all four were built by the same contractor. There was no evidence as to the grade of shingles. The Fischers' hot water heat system could affect the grade, but it was not considered by the Assessor in that context;

rather, it was considered by her as an add-on. The ornamental stone was considered by the Assessor in establishing the classification of the house, but it should have been considered as an add-on. It appears from the appraiser's manual under the heading "Residential Building Additions and Deductions" that values are established for brick, stone, and other exterior wall coverings and for the type of roof. These are all considered add-ons with an established value.

As illustrated in the findings of fact of the trial court, stated above, the findings fail to make the important distinction between the quality of materials and workmanship and the add-on features when it sanctioned and approved the Assessor's conclusions that Fischers' house was a Class 6 residence. This failure to distinguish between the factors properly considered when classifying a home, and the factors properly considered as add-ons, constituted error by the trial court and resulted in an inequitable and nonuniform assessment. The effect of considering all of the above features in the classification process was that Fischers were taxed twice for those features considered in both the grading process and the add-on process.

Hutchinson County argues that the Assessor only took into account three features when she elevated Fischers' house from a Class 5 to a Class 6: the wood shake shingles, the 2 × 12 floor joists, and the angled architectural design. The Assessor and fieldman both testified that in all other respects the quality of materials and workmanship were similar in all four houses. While the record is not clear that these are the only features the Assessor considered when she classified Fischers' house, the three items listed above, standing alone, do not constitute sufficient evidence to elevate Fischers' residence into the Class 6 category.

Hutchinson County has failed to show that the desirability of the architectural design is a proper consideration when classifying a building. The specifications in the South Dakota Appraiser's Manual

make no mention of desirability of design. No appraiser's manuals were produced to indicate that a subjective test exists for desirability. Furthermore, none of the appraisal cards submitted by the Assessor include any category relating to design or desirability, nor was any reference made by the Assessor on her file cards to indicate that Fischers' house was more desirable. The mere fact that the Assessor is instructed to visually view the property does not give her the flexibility to consider architectural design and desirability from a subjective point of view. The evidence is clear that Fischers' house was designed in the same manner as the Tiede house. Both houses were constructed as split-foyer-type houses. No testimony was presented to indicate that the angled design adds value to the house.

There are only two remaining features which could affect classification: the 2 × 12 floor joists and the shake shingles. The contractor testified that the floor joists were not required in the construction for strength purposes. No evidence was presented to indicate whether the shake shingles were better or more expensive than the shingles on the comparable properties. However, even if these two features did add some value to the house, they should have been considered add-ons. It is unreasonable to elevate Fischers' house to a Class 6 house based on the existence of the larger floor joists and the shake shingles. This court is left with a definite and firm conviction that a mistake has been committed and, therefore, we hold that the trial court's findings and conclusions on this issue are clearly erroneous.

ISSUE II: Did the trial court err in concluding that the South Dakota Board of Equalization improperly lowered the valuation of Fischers' residence to $50,000? We hold that it did not.

■ The findings of fact and conclusions of law set forth by the State Board read as follows:

FINDINGS OF FACT

That the assessed valuation of the property as found by the county board of equalization is $60,000; structure $57,135; land $2,875.

That the contention of the appellants is that such assessment is higher than comparable property.

That the insured value of the property on January 1, 1983 was $77,000.

CONCLUSIONS OF LAW

That there is evidence to support appellant's contention that the property is assessed higher than comparable property.

That the county board of equalization failed to properly and accurately equalize the property here in issue.

It is therefore ORDERED that the appeal be sustained and that the valuation of the structure be reduced to $50,000.

SDCL 1–26–25 requires that an agency's findings of fact be written in a "concise and explicit statement of the underlying facts supporting the findings." The State Board failed to include in its findings evidence upon which it based its conclusions, and failed to give any indication as to why the value of Fischers' home was lowered to $50,000. There was no finding as to what classification the board gave the home, and there was no calculation whatsoever as to how it arrived at the $50,000 figure. Therefore, the board's findings and conclusions violated SDCL 1–26–25.

■ The findings and conclusions entered by the State Board also violated our state constitution. The South Dakota Constitution, art. XI, § 2 provides for the uniformity of taxation. While at the very least the findings were inadequate to determine whether such uniformity was accomplished, it is more likely that the findings thwarted the very purpose of this constitutional provision.

First, the State Board's failure to give an explanation or justification for its decision does not lend itself to the concept of uniform taxation, and, in fact, would lead to unequal taxation not only for the Fischers

and the other three home owners but for all the property owners in Hutchinson County.

Second, the findings are unclear as to the evidence upon which the State Board based its findings. If they were based on Ken Doran's use of the Marshall Swift Manual, they are also unconstitutional and against South Dakota law for the reason that Doran used an improper and unequal method of assessing Fischers' house. The record is clear that the officially adopted appraisal manual was the South Dakota Real Estate Manual of 1971 with revised editions or a price conversion factor. SDCL 10–1–16.1 sets forth the requirements of all appraisers as follows:

> The secretary of revenue shall have power by regulation to provide for a standard real estate appraisal manual for all urban and rural property and the same when adopted in conformity with Chapter 1–26 shall be used by all assessors and directors of equalization in the state in complying with the provisions of chapter 10–6.

In relation to the manual used by Doran, the Assessor testified that the methods are different because under the Marshall Swift Manual every component part of a house is figured individually on a price per square foot basis, whereas under the officially adopted manual many of these component parts are grouped together and are figured in the base price per square foot of each classification of a house. This leads to variation in the "fair," "average," and "good" categories under the prescribed manual as compared to the categories under the Marshall Swift Manual. Thus, there will be no uniformity in assessment and, consequently, no uniformity in taxation.

Accordingly, the trial court properly reversed the decision of the State Board on the grounds that its findings of fact and conclusions of law were in violation of both constitutional and statutory provisions, were clearly erroneous in light of the evidence, and were arbitrary and capricious. SDCL 1–26–36.

DECISION

With regard to Issue I, we hold that the findings and conclusions of the trial court were clearly erroneous. Therefore, we reverse and remand on this issue.

With regard to Issue II, we affirm the decision of the trial court.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and FOSHEIM, J., concur in part and dissent in part.

BRADSHAW, Circuit Judge, for HERTZ, Circuit Judge, acting as a Supreme Court Justice, disqualified.

SABERS, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

WUEST, Chief Justice (concurring in part, dissenting in part).

I concur with the majority opinion on the scope of review; however, in my opinion the trial court was not "clearly erroneous." In an appeal to the circuit court, the court has power to determine whether an assessment is excessive or arbitrary and exercises independent judicial judgment to determine valuation. *Knodel, supra.*

The majority opinion emphasizes the guidelines contained in the appraiser's manual in holding the trial court "clearly erroneous." I would place the emphasis upon the judgment of the circuit judge. There were substantial differences between the Fischer house and the others; *i.e.*, better shingles, hot water heat as opposed to forced air heat, air conditioning duct work, a fireplace, angled architectural design, and a finished basement. Valuation of real property is a matter of judgment, and a trial judge has to have some latitude in exercising that judgment. When there is evidence upon which to base that judgment, then I would not hold the trial court "clearly erroneous," although my decision upon the evidence may have been different.

I am hereby authorized to state that Justice FOSHEIM joins in this special writing.