1999 SD 101

Patrick FOLEY and Black Hills
Realty, Appellants,

v.

STATE of South Dakota, ex rel. SOUTH
DAKOTA REAL ESTATE COMMIS-
SION, Appellee.

No. 20721.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Decided July 28, 1999.

Ronald W. Banks of Banks, Johnson, Colbath & Kerr, Rapid City, for appellants.

James C. Robbennolt of Olinger, Lovald, Robbennolt & McCahren, Pierre, for appellee.

MILLER, Chief Justice.

[¶ 1.] In this opinion we affirm the action of the South Dakota Real Estate Commission in disciplining a real estate broker.

## FACTS

[¶ 2.] Patrick Foley has been a licensed real estate broker since October 1978 and is the sole principal in Black Hills Realty. In his capacity as broker, Foley represented Dr. John Sabow in certain real estate transactions, including the sale of property near Rockerville, South Dakota, and dealings regarding property located on Highway 16 in Pennington County, South Dakota. He was also involved in the transaction in which Sabow acquired the First Federal Building in Rapid City from First Bank.

[¶ 3.] Ultimately, Sabow filed a complaint with Commission alleging various instances of misconduct by Foley regarding the First Federal Building transaction. Commission then filed a formal complaint alleging that: (1) Foley failed to protect and promote Sabow's interests as he would his own, in violation of SDCL 36–21A–71(30); (2) he committed acts constituting bad faith, incompetency, or fraudulent dealings, in violation of SDCL 36–21A–71(32); (3) he used his position to gain

undue influence over Sabow, used his position to coerce him, or used duress on him, in violation of SDCL 36–21A–71(33); (4) he made a substantial or willful misrepresentation to Sabow that was injurious to him, in violation of SDCL 36–21A–71(39); and (5) he failed to obtain a buyer's agency agreement, in violation of SDCL 36–21A–73.

[¶ 4.] Following a formal hearing, Commission ruled that Foley had violated the statutory provisions set forth in the complaint and ordered him to pay a $2,500 penalty and to reimburse it for expenses of $2,000. It further ordered a one-year suspension of Foley's license, *which itself was suspended* upon the following conditions: (1) that Foley commit no further violations of real estate laws or administrative regulations for a two-year period; (2) that he complete sixty hours of broker's courses, in addition to the required continuing education hours, within one year; and (3) that he pay the penalty and expenses imposed within thirty days of the date of the final decision.

[¶ 5.] Foley appealed Commission's decision to the circuit court, which primarily affirmed Commission's findings of fact, conclusions of law, and decision. Foley appeals, raising several issues. We affirm.

## STANDARD OF REVIEW

[¶ 6.] SDCL 1–26–36 governs review of agency decisions. This Court makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct. *Appeal of Templeton*, 403 N.W.2d 398 (S.D.1987). When the issue is a question of fact, the actions of the agency are judged by the clearly erroneous standard. *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D.1986). When the issue is a question of law, the actions of the agency are fully reviewable. *Matter of State & City Sales Tax Liability*, 437 N.W.2d 209 (S.D.1989). Mixed questions of law and fact are also

fully reviewable. *Permann v. Department of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113 (S.D.1987).

*Cheyenne River Sioux Tribe Tel. Auth. v. Public Util. Comm'n*, 1999 SD 60, ¶ 12, 595 N.W.2d 604, 608 (quoting *Zoss v. United Bldg. Ctrs., Inc.*, 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843 (citations omitted)). Moreover, "[w]e have modified that standard of review with respect to professional licenses:

> The general burden of proof for administrative hearings is preponderance of the evidence. We are inclined to adhere to this general principle with the following exception. In matters concerning the revocation of a professional license, we determine that the appropriate standard of proof to be utilized by an agency is clear and convincing evidence.
>
> * * *
>
> The quality of proof to be clear and convincing is somewhere between the rule in ordinary civil cases and requirements of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt."

*Kent v. Lyon*, 1996 SD 131, ¶ 15, 555 N.W.2d 106, 111 (quoting *In re* Zar, 434 N.W.2d 598, 602 & n. 7 (S.D. 1989) (citations and internal quotations omitted)).

## DECISION

[¶ 7.] We hold that clear and convincing evidence exists to support Commission's finding that Foley failed to promote and protect Sabow's interests as he would his own by acting contrary to his authority in negotiating the purchase of the First Federal Building.

[¶ 8.] When reviewing Commission's findings "[t]he question is not whether there is [clear and convincing] evidence contrary to the agency finding, but whether there is [clear and convincing] evidence to support the agency finding." *Kent*, 1996 SD 131, ¶ 15, 555 N.W.2d at 110

(citing *Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 878–79 (S.D.1994) (citations omitted)). Here, such clear and convincing evidence exists.

[¶ 9.] Initially, we acknowledge that Sabow's testimony was imprecise on certain timing aspects of the real estate transactions. However, our review of the record establishes that he otherwise consistently testified as to the events that occurred. Even though inconsistencies existed in his testimony, Commission apparently determined him to be credible, or at least more credible than Foley, and accepted his version of the events that transpired. As this Court has previously stated, we must give "due regard" to such a credibility determination. *See Kurtz v. SCI*, 1998 SD 37, ¶ 12, 576 N.W.2d 878, 883 (citation omitted) (stating that this Court gives "[d]ue regard ... to the opportunity of the agency to judge the credibility of the witness").

[¶ 10.] Further, we hold that Commission did not err in determining that Foley violated SDCL 36–21A–71(32). Likewise, it did not err in its determination that Foley failed to obtain appropriate written authority to support his actions in the First Bank Building transaction or in applying SDCL 36–21A–73 to such transaction.

[¶ 11.] Commission found that Foley acted as Sabow's broker in the purchase of the First Federal Building, but failed to obtain written authorization from Sabow to act in such capacity with respect to the purchase of the building. *See* SDCL 36–21A–73. Foley agrees with Commission's finding that he acted as Sabow's agent; however, he claims that its finding that he acted as a buyer's broker without written authorization is clearly erroneous.

[¶ 12.] Foley first claims, and Sabow denies, that Foley presented Sabow with an exclusive buyer agency agreement,

which Sabow refused to sign. Foley also claims that the documents signed by First Bank, indicating a dual agency relationship, were sent to First Bank with Sabow's knowledge. He further alleges that the exclusive listing agreement regarding the Highway 16 property, which Sabow and his wife signed, provided him with the necessary authorization to represent a seller in an exchange agreement. We, however, are not persuaded by such claims.

[¶ 13.] Upon review, nothing in the record establishes that Foley received written authorization from Sabow to act as a buyer's broker or as a dual agent in the First Federal Building transaction. Simply, no writing exists to grant Foley such authorization. Moreover, even if, as Foley claims, Sabow refused to sign a buyer's broker document or obtained knowledge of the forms sent by his attorney to First Bank, such claims are irrelevant to Commission's finding. *See* SDCL 36–21A–73. Commission found, and the record establishes, that Foley failed to receive the necessary written authorization for his actions. This finding is clearly supported by the record evidence.

[¶ 14.] In addition, Commission determined that, because Foley acted as a buyer's broker without written authorization, he violated SDCL 36–21A–73.*

The statute provides in pertinent part:

If a broker represents a buyer of real estate, the broker shall obtain written authorization from the buyer to act on his behalf to advertise for or show real estate to the buyer. Every written authorization shall contain a description of the type and geographical area of property sought by the buyer, the type of agency relationship established, the compensation to be paid, a definite expiration date, the signatures of the buyer and the broker, and the date of authorization.

* Effective January 1, 1999, SDCL 36–21A–73 was repealed by 1998 SD Session Laws ch. 229, § 28.

[¶ 15.] Foley argues that Commission's application of SDCL 36–21A–73 to a single transaction for a single parcel of property was error. He specifically points to the terms "advertise" and "show" as indications that the transactions contemplated in the statute were not of the type involved here. We disagree with Foley's interpretation.

[¶ 16.] When interpreting SDCL 36–21A–73, we must give the words and phrases their "plain meaning and effect." *NSP v. South Dakota Dep't of Revenue*, 1998 SD 57, ¶ 8, 578 N.W.2d 579, 581 (citing *In re AT & T Information Systems*, 405 N.W.2d 24, 27 (S.D.1987)). This Court "must confine itself to the language used," and determine the statute's intent "from what the legislature said rather than what the courts think it should have said." *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citations omitted)). Moreover, " '[w]hen the language of the statute is clear, certain, and unambiguous, there is no reason for construction, and [this Court's] only function is to declare the meaning of the statute as clearly expressed in the statute.' " *Juttelstad v. Juttelstad*, 1998 SD 121, ¶ 13, 587 N.W.2d 447, 450 (citations omitted).

[¶ 17.] The statute mandates written authorization and sets forth the requirements of such authorization when a broker acts on behalf of a buyer to advertise for, or show real estate to, the buyer. Advertising for a buyer occurs when the broker makes known the buyer's interest concerning the purchase of certain property. *See generally* Black's Law Dictionary 54 (6thEd. 1990) (defining "advertise" as "to announce, apprise, . . . give notice of, inform, make known[.]"). Showing occurs when the broker "causes or permits [real estate] to be seen." *See generally* Webster's New Collegiate Dictionary 1066 (1979) (defining "show" as "to cause or permit to be seen").

[¶ 18.] Here, Foley "advertised" for Sabow when he conveyed Sabow's interest in the First Federal Building to a First Bank representative. In addition, by arranging a tour of the building with a First Bank representative, Foley "showed" real estate to Sabow. Therefore, by advertising and showing real estate to Sabow, Foley was required to meet the mandates of SDCL 36–21A–73, which he failed to do. Because he failed to receive written authorization to act on Sabow's behalf, as is statutorily required, Commission did not err when it determined that Foley violated the provisions of SDCL 36–21A–73.

[¶ 19.] Affirmed.

[¶ 20.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.